## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

JUN 1 1 2013

HSIEH LEWIS,                              )
    Plaintiff,                       )
                               )
      v.                             )         Case No. 1:12cv1012
                               )
KRATOS DEFENSE & SECURITY                )
SOLUTIONS, INC., et al.,                 )
    Defendants.                      )
                               )

### MEMORANDUM OPINION

Plaintiff is a widow who seeks to recover life insurance benefits she claims she is due under her late husband's employer-sponsored life insurance plan. Specifically, in three separate counts, plaintiff sues (1) her late husband's employer for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*; (2) the insurer that issued the life insurance plan and adjudicated claims under the plan for breach of fiduciary duty under ERISA; and (3) the insurer's parent company for breach of fiduciary duty under ERISA. Additionally, plaintiff, hedging her bets, asserts in separate counts three state law claims (1) against the employer for breach of the employment contract; (2) against the insurer for breach of the insurance contract; and (3) against all three defendants for promissory estoppel.

At issue on cross-motions for summary judgment are the following questions:

> (1) Whether ERISA governs plaintiff's claims so as to preempt the state law claims and thereby require their dismissal;
>
> (2) Whether the employer violated its fiduciary duty under ERISA where the employer, knowing that plaintiff's husband did not meet the eligibility requirements for enrollment under the plan, nonetheless did not advise plaintiff or her husband of this, but instead enrolled plaintiff's husband in the plan, deducted the

1

premium payments from the husband's paycheck, and forwarded those payments to the insurer; and

(3) Whether the insurer, which was responsible for claim determinations under the plan, violated a fiduciary duty under ERISA or abused its discretion in determining that plaintiff's husband did not qualify for life insurance benefits under the plan.

## I.[1]

Plaintiff Hsieh Lewis is a resident of Virginia and the widow of the late Jimmy Lewis, who was employed by defendant Kratos Defense & Security Solutions, Inc. ("Kratos") at the time of his death. Plaintiff is the named beneficiary of Mr. Lewis's employer-sponsored life insurance plan.

Defendant Kratos is a national security technology company incorporated under the laws of Delaware. Its principal place of business is San Diego, California. Defendant Life Insurance Company of North America ("LINA") is an insurance company incorporated under the laws of Delaware and with its principal place of business in Philadelphia, Pennsylvania. LINA is owned by, and does business as, CIGNA Corporation. LINA issued the life insurance policy at issue here. The policy includes both group term life insurance and voluntary term life insurance, and is referred to here as "the plan." Defendant CIGNA Corporation ("CIGNA") is a health services company incorporated under the laws of Delaware and with its principal place of business in Bloomfield, Connecticut.

Plaintiff's husband, Jimmy Lewis, began working for Ai Metrix, a technology company, in 1999. In 2006, Ai Metrix merged with SYS Technologies, Inc. ("SYS"), and Mr. Lewis

---

[1] The facts recited here are derived from the record. Where factual disputes exist, they are noted and are either immaterial or resolved in favor of the non-moving or non-prevailing party. *See Blair v. Defender Servs.*, 388 F.3d 623, 625 (4th Cir. 2004); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

became an employee of SYS. While Mr. Lewis was employed at SYS, he was enrolled in life and disability insurance policies offered by SYS and issued by Principal Financial Group. Under the Principal Financial Group life insurance policy, Mr. Lewis had group life insurance coverage in an amount equal to twice his salary.

On February 20, 2008, SYS entered into a merger agreement with Kratos. In April 2008, before the merger was consummated, Mr. Lewis was diagnosed with a brain tumor. Despite this diagnosis, Mr. Lewis continued to work full-time. The SYS-Kratos merger closed on June 28, 2008. Following the merger, legacy SYS employees, including Mr. Lewis, remained on the Principal Financial Group life insurance policy that SYS had provided for them, but these employees were advised that they would likely be switched to Kratos's insurance plan sometime in the future.

In December 2008, Mr. Lewis ceased working full-time and began working 16 hours per week and receiving short-term disability benefits. Mr. Lewis received his first short-term disability payment from Principal Financial Group on December 29, 2008. In March 2009, Mr. Lewis began receiving long-term disability payments, while continuing to work 16 hours per week.

In May 2009, Kratos announced that it would transfer legacy SYS employees from their old benefits plan to the benefits plan that Kratos offered its other employees. To this end, legacy SYS employees were permitted to enroll in the Kratos plan during the open enrollment period, which ran from June 1 through June 30, 2009. Coverage under the new Kratos benefits plan began on July 1, 2009.

Kratos offered two types of life insurance, both of which were provided by LINA. Under the benefits plan, Kratos offered a group life insurance plan paid for by Kratos. Kratos also

offered voluntary term life insurance that employees could elect to purchase and pay for themselves.[2] If an employee enrolled in voluntary term life insurance, Kratos deducted the premiums for the insurance from the employee's paycheck and forwarded the premiums to LINA. Under the plan, employees who enrolled in voluntary term life insurance during the initial enrollment period in June 2009 did not have to undergo a medical screening and therefore could enroll even if they had a pre-existing condition. However, the plan explicitly stated that to be eligible to enroll, an employee was required to be an "active, Full-time SYS Employee[] of the Employer regularly working a minimum of 30 hours per week."

Plaintiff testified that Kratos never provided Mr. Lewis with a copy of the plan. During the open enrollment period, benefits information was presented to employees through an Open Enrollment Guide, on-site meetings, webinars, PowerPoint presentations, and brochures. There is a dispute concerning whether eligibility requirements were discussed in these on-site presentations and whether plan documents were provided to Kratos employees. It is clear, however, that Mr. Lewis and plaintiff received a copy of The Voluntary Term Life Insurance Brochure prior to enrolling in the plan. That brochure discussed eligibility to participate in the plan, stating "Who is Eligible for Coverage: You—if you are an active, full time employee of Kratos Defense & Security Solutions, Inc. and work at least 30 hours per week for your employer." Plaintiff testified that she and Mr. Lewis received this brochure before he enrolled in the plan. She also testified that she saw this information on the number of hours employees were required to work and that she underlined the statement that employees were required to work 30 hours per week. Plaintiff testified that she did not believe this requirement presented a coverage

---

[2] Both the group life insurance and the voluntary term life insurance are governed by the same policy with LINA and are collectively referred to as the "plan."

problem because she believed the combination of Mr. Lewis's part-time work and disability benefits was equivalent to full-time status. Plaintiff testified that she and Mr. Lewis spoke with Jennifer Jung, Kratos's Benefits Manager, about the 30-hour requirement found in the brochure, but plaintiff testified that she could not remember Ms. Jung's response.

On June 1, 2009, the first day of the open enrollment period, Mr. Lewis sent an email to Angela Chow, Kratos's Vice President of Human Resources, because he was on long-term disability and was concerned about his ability to retain his benefits coverage under the new plan. In his email, Mr. Lewis raised four issues: the first two questions dealt with disability benefits, and the second two dealt with life insurance. The third and fourth issues, which related to life insurance, are relevant here. In his email, Mr. Lewis said,

> [3] My [Mr. Lewis's] current coverage under the employees group life plan equals 2x annual earnings.

> [4] Voluntary Term Life: If I [Mr. Lewis] read this correctly, my family and I are eligible to purchase VTL with the benefit amount for me being 5X my salary or $500,000 (whichever is less). This would be considered guaranteed issue not subject to medical underwriting. Does this take under consideration pre-existing conditions?

Ms. Chow did not answer Mr. Lewis's questions and instead forwarded Mr. Lewis's email to her colleague Jennifer Jung, a Kratos Benefits Manager, who in turn forwarded the email to LINA Representative Patricia Littleton.

On June 5, 2009, Ms. Littleton replied to Ms. Jung by noting responses under each of the issues raised by Mr. Lewis. For issues three and four, concerning life insurance benefits, she wrote:

> [3] My [Mr. Lewis's] current coverage under the employees group life plan equals 2x annual earnings.

Response: How long has employee been receiving LTD benefits? Technically, employee should check with current Life insurance carrier to continue current coverage under that plan.

[4] Voluntary Term Life: If I [Mr. Lewis] read this correctly, my family and I are eligible to purchase VTL with the benefit amount for me being 5X my salary or $500,000 (whichever is less). This would be considered guaranteed issue not subject to medical underwriting. Does this take under consideration pre-existing conditions?

Response: Employee can enroll now for Guaranteed Issue, however, coverage and premium would not take effect until employee is no longer receiving LTD benefits. If employee enrolls now, he would get the Guaranteed Issue: if he waits, he would be considered a late entrant and be subject to medical evidence of insurability.

Ms. Littleton closed her email by stating "[t]his is a complicated situation since he is on intermittent LTD. He really needs to check with prior carrier first to continue under that plan."

Throughout this email exchange, LINA communicated only with Ms. Jung; LINA never communicated directly with Mr. Lewis. Ms. Jung testified that she has no recollection of what she did with LINA's response to Mr. Lewis's questions, including whether she forwarded the response to Mr. Lewis or discussed it with any of her Human Resources colleagues or supervisors. Ms. Jung testified that when she received an answer like this, it was her practice to forward it directly to the employee, but there is no record that she did so in this instance. Plaintiff testified that Ms. Jung did not respond to this email.[3]

---

[3] While evidence of habit may be enough to create a dispute of fact in some cases, it is not sufficient here given that Ms. Jung has no recollection as to whether she forwarded Ms. Littleton's email response to Mr. Lewis, there is no record of her having done so, and plaintiff testified that she and her husband never received a response to the email. Furthermore, even if Ms. Jung did forward the email to Mr. Lewis, Kratos later contradicted the statements in the email by actually enrolling Mr. Lewis in the plan.

Also on June 5, 2009, Kratos held an on-site meeting about benefits enrollment. Mr. Lewis had a doctor's appointment on that day and was unable to attend the meeting. Prior to the meeting, he forwarded the questions from his June 1 email to Ms. Chow to his supervisor, Michael Smith. Mr. Lewis asked Mr. Smith to raise the questions at the benefits meeting. Mr. Smith raised the questions at the meeting and sent Mr. Lewis an email with the responses. In response to Mr. Lewis's question about voluntary term life insurance, Mr. Smith wrote, "CAN GET AN ADDITIONAL 5x Salary or $500,000 max; WITH NO MEDICAL QUALIFICATIONS, there IS a special form to fill-out for this one." This information appears to have been true, but neglects to inform Mr. Lewis that he was not eligible for coverage under the plan until he was working full-time again. Mr. Smith was not a member of the Human Resources or Benefits Department, and Kratos argues that Mr. Smith therefore lacks the authority to make these representations or to bind the company with these representations.

Kratos classified each employee into one of four categories in its online human resources system: (i) full-time, (ii) part-time, (iii) leave of absence, or (iv) temporary/on-call. During the 2009 open enrollment period, only employees classified as "full-time" in the Kratos system could enroll in the benefits plan. Despite the fact that Mr. Lewis had only been working 16 hours per week since December 2008, Kratos classified Mr. Lewis as "full-time" in its human resources system. Plaintiff contends that Kratos classified Mr. Lewis as full-time because, as plaintiff and her husband then believed, Kratos considered the combination of Mr. Lewis's 16-hour workweek and long-term disability to be the equivalent of full-time status. Kratos claims that Mr. Lewis's classification as a full-time employee in this system was an inadvertent error. Whether or not it was an error, Kratos had many opportunities to recognize that Mr. Lewis was ineligible under the plan to receive benefits or to pay premiums, and to notify Mr. Lewis of his

ineligibility. Yet Kratos never did so. Instead, Kratos enrolled Mr. Lewis in the life insurance plan,[4] paid the premium for the group life insurance on Mr. Lewis's behalf, and deducted premiums for the voluntary term life insurance from Mr. Lewis's paycheck.

Kratos's communications with Mr. Lewis reinforced the plaintiff's and her husband's understanding that Mr. Lewis was properly enrolled in the plan. Specifically, on Monday, June 8, 2009, Mr. Lewis emailed his voluntary term life insurance application to Ms. Jung. He wrote, "Completed VTL application attached for your review. I am assuming that I do not need to complete the Evidence of Insurability Form?" Ms. Jung responded "Wonderful. That is correct—you are all set." Kratos further indicated to Mr. Lewis that he was enrolled in the life insurance plan on July 22, 2009. On that date, Mr. Lewis emailed Ms. Jung saying that he had signed up for voluntary term life insurance during the enrollment period and asking if he could expect to receive a copy of the policy. Ms. Jung replied "CIGNA does not send out policies for life insurance. You should just use your enrollment form for proof."

On May 27, 2010, Mr. Lewis enrolled for benefits for the 2010-11 plan year. He received an automated email confirmation that confirmed his enrollment in both group life insurance and voluntary term life insurance. Kratos employees were also able to check their enrollment status in Kratos's Deltek timekeeping program. On June 19, 2010, Mr. Lewis logged onto the Deltek system and printed a chart confirming that he was enrolled in both group life insurance and voluntary term life insurance.

And, as noted, from July 1, 2009 through Mr. Lewis's death in August 2010, Kratos deducted premiums from Mr. Lewis's paycheck to pay for the voluntary term life insurance.

---

[4] When Kratos enrolled Mr. Lewis in the plan, his prior life insurance coverage under the Principal Financial Group policy was cancelled as of June 30, 2009.

Also, Kratos paid the premiums for Mr. Lewis's coverage under the group life insurance, as it did for all of its enrolled employees.

Following Mr. Lewis's death, plaintiff submitted a claim for life insurance benefits to LINA. LINA denied the claim because Mr. Lewis did not meet the plan's requirement that he work 30 hours per week. LINA's denial letter contained a section entitled "Appeal Rights," that advised plaintiff of her right to appeal and told her about the procedure she needed to follow to appeal. LINA contends that plaintiff did not appeal its decision and has therefore failed to exhaust her claim because she did not follow the prescribed procedures. Plaintiff contends that she did appeal through Kratos, which communicated with LINA regarding the coverage and hired a human resources consultant to help pursue plaintiff's claim for benefits under the plan. Kratos disputes that it acted on behalf of plaintiff to try to persuade LINA to reconsider its decision, but the fact is that plaintiff was the only person on whose behalf Kratos was acting. After communicating with Kratos and its consultant, LINA ultimately declined to change its determination that plaintiff's claim for benefits under the plan should be denied.

## II.

Analysis properly begins with the question whether plaintiff's claims are governed by ERISA for, if so, her state law claims are preempted and must be dismissed.

By its terms, ERISA preempts state law claims to the extent that they "relate to any employment benefit plan." 29 U.S.C. § 1144. ERISA further makes clear that the life insurance plan in issue here is an employment benefits plan, as it is a "plan...established or maintained by an employer...for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise...death...benefits." 29 U.S.C. § 1002; *see* also 29 U.S.C. § 1003. Yet, the fact that the insurance plan in issue is an ERISA plan does not end the

preemption analysis, as the Fourth Circuit has established the following three requirements for complete ERISA preemption of state law claims: (1) the plaintiff must have standing to pursue her claim; (2) the claim must fall within the scope of an enforceable ERISA provision; and (3) the claim must not be capable of resolution without interpreting the ERISA-governed employee benefit plan. *Sonoco Products Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 372 (4th Cir. 2003). Here, there is no dispute that plaintiff's claims seek to enforce her rights under ERISA, and that interpretation of the life insurance plan will be required to resolve her claims. There is, however, a sharp dispute as to whether plaintiff has standing under ERISA to bring her claim.

Defendants argue that plaintiff lacks standing to bring an ERISA claim because she is neither a participant nor a beneficiary under the plan given that Mr. Lewis never worked more than 16 hours per week during the time that the plan covered the legacy SYS employees. Although defendants correctly note that ERISA preemption requires standing and provides that a civil action may only be brought by "a participant or beneficiary...to recover benefits due ...under the terms of his plan," defendants incorrectly argue that standing depends on whether a plaintiff is actually entitled to benefits. 29 U.S.C. § 1132(a)(1)(B); *see Sonoco Products Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 372 (4th Cir. 2003); *Madonia v. Blue Cross & Blue Shield of Virginia,* 165 F.3d 444, 446 (4th Cir. 1993). In this circuit, it is settled that having a meritorious claim is not a requirement for standing as a participant or beneficiary; rather, the Fourth Circuit has made clear that "[w]hether an employee has standing as a 'participant' depends, not on whether he is actually entitled to benefits, but on whether he has a colorable claim that he will prevail in a suit for benefits." *Davis v. Featherstone,* 97 F.3d 734, 736 (4th Cir.1996) (quoting *Abraham v. Exxon Corp.,* 85 F.3d 1126, 1129 (5th Cir.1996)); *see also Moon v. BWX Technologies, Inc.,* 498 F. App'x 268, 273-74 (4th Cir. 2012). Importantly, the test for a

colorable claim is "not a stringent one," but asks instead if the claim is "arguable and nonfrivolous, whether or not it would succeed on the merits." *Davis*, 97 F.3d at 737-38.

In light of *Davis* and *Moon*, it is clear that plaintiff has the requisite standing. By any measure, plaintiff's claim is certainly "arguable and nonfrivolous." *Davis*, 97 F.3d at 737-38. Importantly, Kratos listed Mr. Lewis as a full-time employee in its Human Resources system. Kratos's categorization of Lewis as "full-time" in this system led Kratos to enroll Mr. Lewis in group life insurance and allowed Mr. Lewis to enroll in voluntary term life insurance. Kratos also deducted premiums from Mr. Lewis's paycheck for the voluntary term life insurance. Plaintiff therefore has a colorable claim for benefits under ERISA and has standing to bring her claims.

As such, all of the requirements for preemption are met. Therefore, plaintiff may only bring ERISA claims, rather than state law claims, as the latter are preempted. Accordingly, defendants' motions for summary judgment must be granted with respect to Counts IV, V, and VI, which assert state law claims, and plaintiff's motion for summary judgment on those counts must be denied. And it follows that plaintiff's claims in Counts I, II, and III are governed by ERISA, rather than state law.

### III.

In Count I, plaintiff claims that Kratos breached its fiduciary duty to plaintiff and her husband when it allowed Mr. Lewis to enroll in the company's life insurance plan and encouraged him to believe he was eligible for benefits under the plan when Kratos knew or should have known that Mr. Lewis was not eligible to participate in the plan. The question, then, is whether Kratos's actions in enrolling Mr. Lewis in the plan and erroneously encouraging him

to believe he was eligible for benefits under the plan violated Kratos's fiduciary duty under ERISA.

ERISA imposes a duty on plan fiduciaries to act "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Significantly, ERISA is clear that a fiduciary may have a duty only with respect to certain, but not all, aspects of plan administration. Specifically, ERISA states that a person is a fiduciary with respect to a plan only to the extent that he exercises discretionary control, discretionary authority, or discretionary responsibility in the management or administration of the plan. 29 U.S.C. § 1002(21)(A).

The life insurance plan at issue here makes clear the designation of duties and responsibilities of Kratos and LINA. Specifically, the plan provides that Kratos is the Plan Sponsor and the Plan Administrator, and that as the Plan Administrator, Kratos has the plenary authority "to control and manage the operation and administration of the Plan." The plan prescribes a more limited duty for LINA. Specifically, LINA is "the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims." To this end, the plan provides that LINA "shall have the authority in its discretion to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." There is no factual dispute that both in accordance with the plan's written terms, and in practice, Kratos determined which employees were eligible to participate in the plan, enrolled employees in the plan, and either paid the employees' premiums or withheld the premiums from employees' paychecks. On the other hand, LINA's authority

12

under the plan was limited to adjudicating claims and construing terms of the plan for that purpose.

Given this division of authority, this case is similar to *Canada Life Assur. Co. v. Estate of Lebowitz*, 185 F.3d 213 (4th Cir. 1999). There, the Fourth Circuit found that Whiteford, Taylor, and Preston, LLP ("WTP"), the employer and plan administrator, was the "ultimate fiduciary with regard to coverage." *Id.* at 237. WTP determined that its employee, Mr. Lebowitz, was eligible for coverage and enrolled him in the life insurance plan, although whether he was actually eligible was disputed. The policy designated WTP as the "Plan Administrator" with "the exclusive and absolute discretion to interpret and administer the [Policy] in accordance with its terms." *Id.* A unanimous Fourth Circuit panel held that although WTP had delegated its "exclusive and absolute discretion" over the handling and adjudication of claims to the insurance company, it had retained "exclusive and absolute discretion" over the determination of employee coverage and premium payments. *Id.* Eligibility determinations were made by WTP and were not verified by the insurance company. *Id.* The Fourth Circuit therefore concluded that WTP was the ultimate fiduciary with regard to employee coverage and that when WTP paid Lebowitz's insurance premiums it determined that he was covered. *Id.*

The same is true here. Although LINA was given the authority to "interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact," Kratos had the exclusive authority "to control and manage the operation and the administration of the plan," including making eligibility determinations,

enrolling participants in the plan, and collecting their premiums. Kratos is therefore the ultimate

fiduciary with regard to enrollment, and LINA has no fiduciary duty with respect to enrollment.[5]

LINA and Kratos also attempt to distinguish *Canada Life* by pointing out that in that case

the parties disputed whether the employee was working a sufficient number of hours to

participate in the plan, whereas here, all parties acknowledge that Mr. Lewis was working 16

hours per week the entire time that the legacy SYS employees were covered under the plan. This

distinction has no bearing on which party is the fiduciary for enrollment determinations. The

plan makes clear that this role is exclusively Kratos's.

Given that it was Kratos's exclusive role to determine eligibility under the plan, it follows

that Kratos had a fiduciary duty to Mr. Lewis and other employees to make these determinations

"with the care, skill, prudence and diligence under the circumstances then prevailing that a

prudent man acting in a like capacity and familiar with such matters would use in the conduct of

an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). On the basis of

the undisputed material facts, Kratos failed in carrying out this duty, as it erroneously allowed

Mr. Lewis to enroll in the plan, encouraged him to believe that he was covered by the plan, and

deducted premiums from his salary to pay for the plan. Given these undisputed facts, it is clear

that Kratos did not fulfill its fiduciary duty to Mr. Lewis.

---

[5] Somewhat surprisingly, LINA argues that it is the entity that makes eligibility determinations, given the plan language that LINA has the authority to "decide questions of eligibility for coverage." This argument is unpersuasive; it conflates eligibility to recover on a claim with eligibility to be enrolled in the plan. The latter, according to the plan, is exclusively the responsibility of Kratos. The language "deciding eligibility for coverage" is in the claims section, not the enrollment section, of the plan. And, in practice, Kratos, not LINA, handled enrollment, made premium payments, and deducted premiums from employees' paychecks. Consistent with this division of authority, there is no evidence in this record that LINA had the information necessary to review the eligibility of enrolled employees to ensure that they were qualified to enroll. Nor is there any evidence that LINA made any enrollment decisions.

Although Kratos suggests that there are factual disputes that should prevent summary judgment, none of those disputes are material, nor do they alter the conclusion that Kratos failed to fulfill its fiduciary responsibilities to Mr. Lewis. First, Kratos argues that there is a dispute concerning what information Mr. Lewis had regarding the 30-hour work week requirement. It is clear that plaintiff and Mr. Lewis saw at least one document setting forth the 30-hour requirement, but it is equally clear that plaintiff and her husband thought that working 16 hours plus receiving long term disability payments served to satisfy this requirement. And importantly, Kratos's actions in enrolling plaintiff's husband in the plan and deducting the premiums from his pay certainly confirmed to plaintiff and her husband their belief that he was covered. Indeed, when plaintiff's husband submitted his application for the voluntary life insurance, he noted that he assumed that it was unnecessary to fill out the Evidence of Insurability form, and Kratos's Benefits Manager responded, "Wonderful. That is correct—you are all set." These facts surely trump any contrary inference invited by any document plaintiff and her husband may have seen.

Second, Kratos argues that there is a dispute concerning whether Kratos truly considered Mr. Lewis to be a full-time employee or whether he was inadvertently and erroneously listed as such. This dispute is immaterial. Even assuming that Kratos's listing of Mr. Lewis as a full-time employee was an inadvertent error, it is undisputed that it was an error made by Kratos. Nor is it disputed that Kratos was aware of Mr. Lewis's medical condition, knew he was receiving disability benefits and working only 16 hours per week, and knew that he was enrolled in the plan, despite the fact that LINA had advised Kratos that Mr. Lewis was likely not eligible to receive benefits or pay premiums under the plan. Indeed, Kratos received an email from LINA's representative on June 5, 2009 stating that Mr. Lewis's coverage could not begin until he was off long-term disability and back to working full-time. Yet, rather than advising Mr. Lewis that he

was not eligible to enroll in the plan for the purpose of receiving benefits, Kratos enrolled Mr. Lewis in the plan and deducted premiums from his paycheck, and thereby gave Mr. Lewis every reason to believe that he was covered and that his family was financially secure.

Of course, Mr. Lewis could have enrolled in the plan solely for the purpose of avoiding the medical screening requirements if he were later able to return to full-time employment. But given Mr. Lewis's medical condition, it was never a realistic possibility that he would return from disability leave. In any event, Kratos did not tell Mr. Lewis that he would be enrolled in the plan solely for the purpose of avoiding the medical screening and pre-existing condition requirements should he later return to full-time work. Instead of advising Mr. Lewis of the facts and consulting with him on his benefits, Kratos led Mr. Lewis and plaintiff astray, enrolling Mr. Lewis in the plan, deducting the premiums from his paycheck, and allowing plaintiff and Mr. Lewis to think that Mr. Lewis was covered. By any measure, these undisputed facts establish that Kratos failed to act "with the care, skill, prudence and diligence" required of a fiduciary under ERISA. Accordingly, plaintiff's motion for summary judgment as to Count I must be granted, and Kratos's motion for summary judgment as to Count I must be denied.

## IV.

Plaintiff's claims against LINA stand on different footing. LINA, in contrast to Kratos, has a different role under the plan. Thus, the plan specifically provides that LINA's role is limited to adjudicating claims made under the plan, and in doing so, it has the discretion to interpret the terms of the plan. All other duties under the plan are reserved to Kratos, which is given plenary authority. LINA has no duty under the plan to review the list of Kratos employees enrolled in the plan to ensure that they are eligible for enrollment. LINA also has no duty under the plan to communicate directly with employees to alert them that they are not eligible to enroll

under the terms of the plan. Nor is there any evidence that LINA ever did so. Rather, LINA's sole duty is to adjudicate claims made under the plan.

The Fourth Circuit has made clear that when an ERISA benefits plan vests the plan administrator with discretionary authority, a court reviews the administrator's determinations under the plan for abuse of discretion. *Helton v. AT & T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013) (quoting *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010)). Under this standard, a court should affirm the plan administrator's determination if the determination is "the result of a 'deliberate, principled reasoning process' and is supported by 'substantial evidence,' even if [the court] would reach a different decision independently." *Id.* at 351 (quoting *Williams*, 609 F.3d at 630).

In this case, the plan vests LINA with the discretion to make claim determinations. No evidence in the record suggests that LINA abused its discretion in denying plaintiff's claim under the plan. To the contrary, the record is clear that LINA followed a "deliberate, principled reasoning process" that was supported by "substantial evidence." *Helton*, 709 F.3d at 351. The plan explicitly states that an employee must be working 30 hours per week in order to receive benefits under the plan, and Mr. Lewis did not work 30 hours per week at any time that the LINA plan covered legacy SYS employees. Although Kratos's erroneous enrollment of Mr. Lewis in the plan in effect binds Kratos, it does not bind LINA. *C.f. Canada Life Assur. Co. v. Estate of Lebowitz*, 185 F.3d 213 (4th Cir. 1999). Requiring LINA to pay benefits under the plan because of Kratos's mistake would effectively require LINA to review all eligibility determinations.

Plaintiff's arguments to the contrary are unpersuasive. First, plaintiff argues that the life insurance plan is ambiguous because it uses different terms to describe eligible employees,

namely it requires that an employee be working 30 hours per week, be an "active" employee, and be a "full-time" employee. Because these terms are not inconsistent, there is no ambiguity.

Second, plaintiff argues that LINA denied her claim because Mr. Lewis was not working at least 30 hours per week at the time of his death and that the determination based on Mr. Lewis's workload at the time of his death was improper. LINA has made clear, however, that it denied plaintiff's claim because Mr. Lewis was not working 30 hours per week at any time after the plan was amended to cover legacy SYS employees on July 1, 2009.

Third, plaintiff argues that Mr. Lewis's eligibility to participate in the plan should be evaluated as of July 1, 2008, rather than July 1, 2009. Kratos adopted the plan on July 1, 2008 for some of its employees but did not cover legacy SYS employees under the plan until July 1, 2009. Plaintiff argues that because the eligibility language in the plan is based on the July 1, 2008 adoption date, that date should be used to determine Mr. Lewis's eligibility. Neither party disputes that Mr. Lewis was working full-time as of July 1, 2008. But plaintiff's argument fails. The plan makes clear that Mr. Lewis and the other legacy SYS employees were not covered under the plan until July 1, 2009. There is simply no basis for using the earlier date, when the legacy SYS employees were covered under a different plan, to determine eligibility under the later Kratos plan.

Finally, plaintiff argues that LINA made certain errors in its denial letter that indicate that it did not properly evaluate plaintiff's claim for benefits. Specifically, the letter states that "Kratos Defense & Security Solutions, Inc. acquired SYS effective July 1, 2009 at which time all active, Full-time SYS employees regularly working 30 hours per week were considered in an eligible class of insured under this policy." While plaintiff is correct that Kratos actually acquired SYS more than a year before the date used in this letter, the error is immaterial, as SYS

18

legacy employees were not eligible for the plan until July 1, 2009. Regardless of the date of acquisition, the date on which Mr. Lewis became eligible for benefits under the plan is correctly stated.

LINA asserts that its motion for summary judgment should be granted because plaintiff failed to exhaust the plan's internal appeals. It is true that plaintiff did not follow the precise appeal procedures specified by LINA, but it is equally true that plaintiff vigorously pursued the matter by asking Kratos to assist her in her quest to obtain benefits under the plan. Kratos, to its credit, responded and communicated extensively with LINA on the issue and went so far as to hire Mercer, a human resources consultancy, to pursue plaintiff's claim.[6] Kratos's efforts to persuade LINA to change its determination certainly put LINA on notice that plaintiff objected to LINA's decision regarding her claim. In the end, LINA declined to change its claim denial determination. Given these facts, it is reasonable to conclude that plaintiff effectively exhausted her appeal, even though she did not use LINA's specific procedure.

---

[6] Indeed, the record reflects that Kratos apparently believed that Mr. Lewis was properly enrolled under the plan and eligible to receive benefits after his death. On February 7, 2011 Benefits Manager Shannon Collins wrote in an email to Phil Carrai, President of Kratos Technology and Training Services or Solutions:

> The main issue at hand is that Jimmy was in a special employment
> circumstance when he returned from leave which makes the
> responsible party for the claim somewhat "squirrelly." However,
> Last week I was able to locate several emails that went back and
> forth between my predecessor (Jennifer Jung), our past broker
> (ELT) and CIGNA reaffirming Jimmy's basic life and voluntary
> life (along with all other employees) when the transition was made
> to CIGNA in 7/09. Our consultant feels this [is] potentially the
> final piece of proof needed for CIGNA to pay the claim since it's
> written proof of their acceptance of his eligibility.

Ms. Collins is apparently referring to the list of employees enrolled as of the July 1, 2009 transition date, which, as previously noted, did not contain sufficient information for LINA to verify Mr. Lewis's eligibility for enrollment.

It should also be noted that although it is settled in this circuit that "[t]he pursuit and exhaustion of internal Plan remedies is an essential prerequisite to judicial review of an ERISA claim for denial of benefits,"[7] it is equally well-settled in this circuit that courts may allow claims to proceed without exhaustion where a plaintiff makes a "clear and positive" showing that exhaustion would be futile. *Makar*, 872 F.2d at 83. This is appropriately a stringent standard, but it is quite clear that it is met in this case, as it appears that LINA had before it all of the facts that have been recited here and was firm in its denial of benefits. Moreover, Kratos and Mercer, a firm experienced in dealing with complex human resources issues, attempted to change LINA's view, and failed to do so. Therefore, plaintiff's failure to exhaust in accordance with LINA's procedures is not controlling.

In sum, there is no evidence that LINA violated its fiduciary duties under ERISA or abused its discretion in determining that plaintiff's claim was not covered under the plan. As such, LINA's motion for summary judgment with regard to Counts II and III must be granted, and plaintiff's motion for summary judgment with regard to Counts II and III must be denied.[8]

## V.

In conclusion, plaintiff's motion for summary judgment as to Count I must be granted and defendants' motions for summary judgment as to Count I must be denied. Defendants' motions for summary judgment as to Counts II, III, IV, V, and VI must be granted, and plaintiff's motion for summary judgment as to these Counts must be denied. The issue of damages remains to be litigated, and an Order will issue setting forth a schedule for briefing and,

---

[7] *Gayle v. United Parcel Serv.*, 401 F.3d 222, 230 (4th Cir.2005) (citing *Makar v. Health Care Corp. of the Mid-Atlantic*, 872 F.2d 80, 82 (4th Cir.1989)).

[8] The same result obtains with respect to CIGNA because CIGNA is not a fiduciary under the plan, and there are no arguments made about CIGNA that differ from those made about LINA.

if necessary, a hearing to determine the appropriate measure of damages and attorney's fees, if any. The entry of final judgment must await the resolution of the damages and attorney's fees issues.

An appropriate Order will issue.

Alexandria, Virginia
June 11, 2013

T. S. Ellis, III
United States District Judge